UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
PIKEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. |
| | ) | 7:15-011-DCR-MAS-2 |
| v. | ) | and |
| | ) | Civil Action No. |
| RUSSELL T. MAY, | ) | 7:18-087-DCR-MAS |
| | ) | |
| Defendant/Petitioner. | ) | |
| | ) | |

**REPORT & RECOMMENDATION**

This matter is before the undersigned on Petitioner Russell T. May's ("May") Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255. May alleges violations of his right to counsel, equal protection rights and speedy trial rights as well as multiple claims of ineffective assistance of counsel. [DE 354]. The United States responded in opposition [DE 379], and May filed a reply [DE 392]. After reviewing the record in its entirety, the Court recommends May's motion be denied for the reasons stated below.

**I.  RELEVANT FACTUAL BACKGROUND**

On December 1, 2015, May made an initial appearance and was arraigned in this Court on an indictment charging May and multiple other defendants with, among other things, trafficking in several controlled substances. [DE 1; 37]. May was specifically charged with one count of conspiracy to distribute cocaine, one count of distributing cocaine, three counts of possession with intent to distribute various controlled substances, and one count of possession of a firearm in furtherance of a drug trafficking crime. [DE 1]. On February 4, 2016, May pleaded guilty to conspiracy, trafficking in cocaine and the firearm charge as part of a plea agreement. [DE 169-

1

71]. In return, the United States agreed to dismiss the remaining charges against May. [*Id*.]. Following his sentencing, May appealed the decision. [DE 241]. The Sixth Circuit affirmed the District Court's judgment on August 11, 2017. [DE 324].

May then timely filed the present Motion to Vacate, Set Aside, or Correct a Sentence on August 14, 2018. [DE 354]. In total, May has alleged forty-one grounds in support of his motion. While the bulk of May's arguments center upon alleged violations of his Sixth Amendment rights under the theory of ineffective assistance of counsel, he also claims violations of his right to counsel, equal protection and speedy trial rights. The Court will address the ineffective assistance of counsel grounds before turning to the remaining constitutional arguments.

## II.   ANALYSIS

**A.   Ineffective Assistance of Counsel**

To succeed on a § 2255 motion, petitioner "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). In his motion, May has raised numerous grounds to support his claim for ineffective assistance of counsel.[1] Despite the sheer volume, May's arguments fail because they are only supported by conclusory statements, refuted by the record in the case, or misconstrue the relevant legal standard.

---

[1] May had three attorneys defending him in this matter. Retained counsel Robert F. Wright represented from May's initial appearance until Wright's motion to withdraw was granted on December 23, 2015. Pamela Dae Perlman was appointed at that time and represented May until after she filed his notice of appeal. Kevin Schad was appointed to represent May on direct appeal.

1. Grounds Only Supported by Conclusory Statements

Initially, May offers very few, if any, facts to support his arguments that his trial counsel was ineffective. Conclusory statements are insufficient to warrant § 2255 relief. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (acknowledging that conclusory statements are insufficient to warrant § 2255 relief). Thus, May's underdeveloped claims should be dismissed. *See Johnson v. United States*, 457 Fed. App'x 462, 466-67 (6th Cir. 2012); *United States v. Domenech*, No. 1:06-CR-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013).

Namely, May claims counsel asserted "incriminating statements" that were "critically damaging," but May neither specifies the statements nor explains the resulting critical damage caused by those statements. [DE 354 at Page ID # 1443 (ground 13); 1409-10 (grounds 32-33)]. May repeatedly contends that his counsel failed to impeach certain witnesses properly, but he fails to provide which statements were deserving of impeachment or even, at times, which witness's testimony he is referencing. [*Id.* at Page ID # 1403 (ground 26); Page ID # 1405-06 (grounds 28-29)]. The only support May offers are vague statements, such as saying testimony was "inaccurate or could be impeached" or that counsel failed to "preserve []several objections and [] error[s]." [*Id.* at Page ID #1403-04 (grounds 26-27)].

Similarly, May does not explain the relevance or importance of the grand jury records he complains his counsel failed to inspect. [*Id.* at Page ID # 1417-18 (grounds 40-41)]. May simply contends his counsel should have obtained "grand jury minutes, grand jury witness lists, names of person impaneled […]." [*Id.*].

May also makes a vague reference to the failure of his counsel to document an alleged verbal agreement concerning his pretrial release. [*Id.* at Page ID # 1431 (ground 1) ("I … never received pretrial release – "bond" or "bail" as guaranteed to me"); Page ID # 1397 (ground 19)

3

("[…] failure to put a verbal 'agreement […] in writing' or on the record in the presence of the Judge constitutes ineffective assistance of counsel[.]"]. Once again, May does not provide any substantiation to the existence of a verbal agreement supporting pretrial release or provide a single fact in the record supporting this notion. Rather, the Court is left guessing at the basis of May's alleged claim.

May often discusses that his counsel failed to "develop a working relationship" with him and did not adequately prepare for May's case. [*Id.* at Page ID # 1399-1402 (grounds 21-23)]. He states that his counsel failed to confer with him, to see discovery, to properly investigate the crime, or interview witnesses. [*Id.*]. In conjunction with this claim, May argues that his counsel failed to "familiarize him/herself with the facts and law relevant to the case," and that this made his plea agreement involuntary. [*Id.* at Page ID # 1396 (ground 18).] May also claims he requested that "discovery be provided," but never received it. [*Id.* at Page ID # 1434 (ground 4)]. Again, May provides no specificity or any references to the record as to what discovery he wanted counsel to conduct, what facts counsel did or did not familiarize themselves with, what relevant legal standards counsel failed to appreciate or how that would have assisted his case. Without more, May's numerous grounds remain legally insufficient. *Short v. United States*, 504 F.3d 63, 65 (6th Cir. 1974) (affirming denial of a § 2255 motion because petitioner's claims "were stated in the form of conclusions without any allegations of facts in support thereof, as well as being unsupported by proof or reference to such proof."). Accordingly, the Court recommends denial of the motion on these grounds.

   2. Grounds Refuted by the Record

Some of May's other grounds for relief are directly refuted by the record. May claims that counsel was "asked to file an appeal and to make bond happen," but failed to do so timely. [DE 354 at Page ID # 1433 (ground 3); 1436 (ground 6); 1445 (ground 15)]. Contrary to May's

argument, however, his counsel timely filed an appeal at May's request [DE 242 (Notice of Appeal)] and timely objected to his pretrial detention, an objection that the Court overruled [DE 97 (sealed Objection to Order of Detention); DE 117].

May also claims that his attorney failed to object to a two-point enhancement in the calculation of his sentence based on possession of a firearm [DE 354 at ID # 1398 (ground 20)], but the record establishes that May did not receive a two-point enhancement. [DE 245 at ID # 679-80 (offense calculations not including a two-point enhancement for firearms)].

May makes numerous complaints that his counsel failed to send him certain requested documents. Specifically, May argues that his counsel failed to send him his presentence report. [DE 354 at Page ID # 1439 (ground 9)]. However, according to correspondence submitted by his counsel, Pamela Perlman ("Perlman"), May was sent the requested document on multiple occasions. [DE 379, Perlman Declaration, Page ID # 1650 (allegation 9), 1654 (letter)]. May contends Perlman failed to provide him with certain transcripts when he requested [DE 354 at Page ID # 1442 (ground 12)], but Perlman had withdrawn as counsel by that date [DE 265] and the requested transcript was not filed until after her withdrawal [DE 277]. May cannot complain about something counsel omitted in doing when she was not even his counsel. Likewise, he complains his counsel did not provide him with certain documents from his appellate record. [DE 354 at Page ID # 1446 (ground 16)]. Yet, the Court, because May did not have appointed counsel at the time, addressed this request and ordered that the records be provided to May upon his payment for the copies. [DE 346]. As the record makes clear, May simply never paid.

Moreover, May argues that the plea agreement he accepted was the result of coercion—that his counsel was willing to "accept whatever deal" the Government was willing to offer. [DE

354 at Page ID # 1437 (ground 7); Page ID # 1438 (ground 8); Page ID # 1395 (ground 17)]. The transcript of the rearraignment, however, tells a different tale:

> THE COURT: Are you satisfied with the advice and representation that [your counsel has] given you to this point in the proceedings?
>
> DEFENDANT MAY: To this point, yes, sir.
>
> . . .
>
> THE COURT: Do you need some additional time to look over these [plea agreement] documents, Mr. May? If you do, we can take a recess, and you can take really as much time as you need? Would you like some additional time, Ms. Perlman?
>
> DEFENDANT MAY: I don't think that –
>
> MS. PERLMAN: Your Honor, I was here and met with him for two hours last week, and we went through the entire plea agreement –
>
> THE COURT: All right.
>
> MS. PERLMAN: -- at length and in depth. We met for about 10 minutes this morning so that I could explain the appellate provision and how he had asked me to work on that, and that I had been successful in doing so. There were two other provisions that he had asked me to work on that I was successful in negotiating. He has had this plea agreement for -- the basic plea agreement for about two weeks, and I'm a little bit taken aback by his answers this morning.
>
> THE COURT: Well, of course, I'm not familiar with all of the discussions. My only point is that if the parties need additional time to look over these documents, we'll take as much time as necessary.
>
> DEFENDANT MAY: No, that's –
>
> MS. PERLMAN: Well, then it would –
>
> DEFENDANT MAY: -- not necessary.
>
> MS. PERLMAN: -- be up to my client.
>
> DEFENDANT MAY: No, that's not necessary.
>
> . . .
>
> THE COURT: Mr. May, were you able to hear [the Assistant United States Attorney] as he was going through your plea agreement?

6

DEFENDANT MAY: Yes, Your Honor.

THE COURT: Did he accurately summarize it as you understand it?

DEFENDANT MAY: That is correct, Your Honor.

THE COURT: All right. Other than what's contained in the plea agreement and in the supplement, excuse me, has anyone else, in other words, anyone other than the government, made any promises to you that have caused you to either sign these documents or to indicate that you wish to enter a guilty plea in the case?

DEFENDANT MAY: No, Your Honor.

THE COURT: All right. Has anyone made any threats or in any way forced you either to sign these documents or to enter a guilty plea?

DEFENDANT MAY: No, Your Honor.

[DE 276 at Page ID # 923; 925-26; 928-29].

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal" because of the "strong presumption of verity" of the statements made under oath during the plea colloquy." *Id*. at 74.

May represented at the plea colloquy that he was satisfied with his counsel. He did not disagree with his attorney's representation that she had negotiated with the United States for two weeks to obtain the provisions in the plea agreement that he wanted. He further assured the Court that no one (which would include his own counsel) coerced him to sign the plea agreement. The record does not demonstrate that counsel, who successfully negotiated certain provisions of the plea over two weeks' time, was willing to "accept whatever deal." In reality, the record proves the opposite, while May provides no support for his version of events.

Ultimately, May sets forth many arguments that his counsel failed to appeal his case or failed to provide him certain documents or coerced him to plea. However, in each instance, the record plainly rejects May's arguments. Thus, the Court would recommend denial of May's motion on these grounds.

3. Ground Not Supported by the Law

In one instance, May's claim is unfounded due to a misunderstanding of the law. May contends that his counsel failed to make a motion for dismissal based upon double jeopardy. [DE 354 at Page ID # 1415-16 (grounds 38-39)]. May cites that his past run-ins with state law enforcement dealt with the "same course of conduct" for which he is currently imprisoned. [*See* DE 245 at Page ID # 683-84]. Even assuming the same conduct is at issue and he was adjudged guilty in those state matters, May's prior legal problems related to alleged violations of state law. [*Id.*]. As the Supreme Court has made clear, "[s]uccessive state and federal prosecutions [for the same conduct] do not violate the Double Jeopardy Clause." *Koon v. United States*, 518 U.S. 81, 112 (1996) (internal citation omitted).

4. Remaining Grounds Fail to Meet the *Strickland* Standard

May's remaining ineffective assistance of counsel claims are sufficiently specific as to require the application of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 685-87 (1984). To prevail on an ineffective assistance of counsel claim in a § 2255 motion, a petitioner must prove (1) that their counsel's performance was deficient, and (2) that petitioner suffered prejudice due to that deficiency. *Id*. at 687. A petitioner must satisfy both prongs of the test, but courts need "not address both components of the deficient performance and prejudice inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Because none of May's grounds satisfy

the first prong of *Strickland* as explained below, the Court recommends that the District Court deny May's § 2255 motion on the grounds discussed below.

To establish the first prong of *Strickland*, a petitioner must "prove that counsel's representation was not merely below average, but rather that it 'fell below an objective standard of reasonableness.'" *United States v. Dado*, 759 F.3d 550, 563 (6th Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). Courts employ a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. ... [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (internal citations and quotation marks omitted; alteration in original). *See also Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 849 (6th Cir. 2017); *Goldman v. Anderson*, 625 F.2d 135, 138 (6th Cir. 1980) (stating that a failure to object, when it is a tactical decision by counsel, without more, will not provide a basis for habeas relief.).

May bemoans several strategic moves made by his counsel. He argues his counsel's "failure to object to multiple questions" during direct examination of a United States witness at the sentencing hearing verified allegations that otherwise had no corroborating evidence. [DE 354 at Page ID # 1440 (ground 10)]. Perlman disputes this claim, maintaining that May neither instructed her to make these objections nor were any of the objections procedurally permissible. [DE 379, Perlman Declaration, Page ID # 1651]. Rather, as the record reflects, Perlman properly cross-examined the witness making every effort to impeach and discredit the testimony of the

witness. [DE 277, Page ID # 959-61]. Perlman, under any analysis, acted reasonably and consistent with common practice in such situations. *Goldman*, 625 F.2d at 138.

Similarly, May claims Perlman's acts or omissions directly led to a four point enhancement for a leadership role in his sentencing calculation. May faults Perlman in two ways. First, May alleges that Perlman's "refusal" to submit a recorded conversation between another party and a confidential informant prevented May from proving his "innocence of the four point enhancement for a leadership role." [DE 354 at Page ID # 1441 (ground 11)]. Second, May states that counsel "gave the case away" when conceding factual issues at the sentencing hearing. [DE 354 at Page ID #1407 (ground 30)]. The transcript of the sentencing hearing, once more, refutes this claim. At the hearing, Perlman argued that May had a very limited leadership role, if any, citing specific case law for the proposition that because May controlled the assets at issue (drugs), but not the people involved, he should not receive the enhancement. [DE 277, Page ID # 962-63]. To the extent Perlman was forced to concede that there was some circumstantial evidence of the leadership role May played in the offense, she did so to alternatively suggest the possibility of a one-point leadership enhancement rather than a four-point enhancement. [DE 379, Perlman Declaration, Page ID # 1651]. In short, Perlman, "in the exercise of reasonable professional judgment," made every effort to defend May in a manner that was consistent with reasonable professional assistance. [*Id.*]; *See also Leonard*, 846 F.3d at 849.

May further claims that counsel's refusal to "have a chemical analysis done on the alleged cocaine" is evidence of her ineffectiveness. [DE 354 at Page ID # 1402 (ground 24)]. May explains that counsel should have tested the drugs because they were "mostly, if not all baking soda." [*Id.*]. In her professional judgment, Perlman determined the test was not necessary. As she explains, the "KSP lab tests confirmed enough of the substances to substantiate the amounts

10

asserted in the plea agreement." [DE 379, Declaration of Pamela Perlman at Page ID # 1651]. The government needed merely to prove there was a "detectable amount" of cocaine (not 500 grams of pure cocaine base) to obtain a conviction of May under 21 U.S.C. § 846.

May even suggests ineffective assistance of counsel because his first attorney "had issues and took multiple attempts" in recusing himself as May's counsel. [DE 354 at 1435 (ground 5)]. Counsel's minor procedural error, remedied within one day, can hardly be considered ineffective assistance of counsel. [*See* DE 89 and 91].

Finally, May suggests his counsel should have argued at sentencing for less "restrictive means of supervised release due to [his] deteriorating health condition." [DE 354, at Page ID # 1444 (ground 14)]. May's counsel chose to make several arguments relating to mitigation and reduction of sentence at the hearing. [DE 277]. She also had May's father speak to the Court at the hearing to make an emotional appeal to the Court on behalf of her client. [DE 277, at Page ID # 974-75]. Perlman's choice of one mitigation strategy over another is not inherently unreasonable, particularly where there is no indication the strategy prejudiced the petitioner. *See Leonard*, 846 F.3d at 849 (holding that "the choice of one mitigation strategy over another does not appear unreasonable to this Court").[2]

**B.   May's Remaining Arguments**

Although the bulk of May's arguments center upon ineffective assistance of counsel under the Sixth Amendment, May also raises three other alleged constitutional violations: (1) a violation of his right to counsel [DE 354 at Page ID # 1408 (ground 31)]; (2) a violation of his rights under

---

[2] May also alleges that his counsel failed to provide him with case documents, a claim that counsel testifies is inaccurate, and provides exhibits to refute. [DE 354 at Page ID # 1439 (ground 9); 1442 (ground 12), and 1446 (ground 16); DE 379, Declaration of Pamela Perlman (allegations 9, 12, 16, 24)].

11

the Equal Protection Clause [DE 354 at Page ID # 1432 (ground 2)]; and (3) a violation of his speedy trial rights [DE 35 at Page ID # 1411-12 (grounds 34-35)]. Upon review, not only do these arguments fail to overcome procedural hurdles, but the arguments lack merit.

   1. Procedural Deficiencies

The Court first notes that May, in his plea agreement, waived his right to collaterally attack his guilty plea, conviction or sentence with the sole exception for claims of ineffective assistance of counsel. [DE 237 at Page ID # 637 (May "waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, [May] also waives the right to attack collaterally the guilty plea, conviction, and sentence.")]. A defendant may waive any right in a plea agreement, even a constitutional right, if the waiver was made knowingly and voluntarily. *See, e.g.*, *United States v. Griffin*, 854 F.3d 911, 914 (6th Cir. 2017).

Here, May's plea was knowing and voluntary as demonstrated in the sentencing hearing transcript discussed above. [DE 276]. The Court ensured that May was competent to enter a guilty plea, understood the allegations against him, and had discussed the allegations with counsel. [*Id.* at Page ID # 918-26]. The Court instructed May concerning the consequences of his plea agreement, and emphasized he was waiving his ability to "attack collaterally the guilty plea, the conviction, and also the sentence." [*Id.* at Page ID # 929-31, 934.] May specifically confirmed that no one had made promises or threats to him to induce him to sign the plea agreement and that he did not need additional time to review the agreement. The Court found the plea "a knowing and a voluntary plea" and May "fully competent and capable of entering an informed plea." [*Id.* at Page ID # 944]. Because his plea was made knowingly and voluntarily, May is precluded by his plea agreement from any and all collateral attacks beyond ineffective assistance of counsel.

In addition to the waiver provision in the plea agreement, May's collateral attacks also procedurally fail because he did not raise them on his direct appeal. To assert arguments as part

of a § 2255 motion, a petitioner must have raised those same issues on direct appeal. "Otherwise, the claim is procedurally defaulted." *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). May admits none of these three issues were raised on appeal. [DE 354 at Page ID # 1408 (ground 31; Page ID # 1432 (ground 2); 1411-12 (grounds 34 & 35)]. May could circumvent this rule upon a showing of "cause" for raising the issues late and "actual prejudice." *Bousley v. United States*, 523 U.S. 614, 622 (1998). Yet, May fails to provides any information in the Motion to overcome the "intentionally high" standard of the exception. *Id*. Thus, these issues are not only barred by the plea agreement but are also precluded because May failed to raise them in his direct appeal. *See United States v. West,* No. 06-20185, 2017 WL 130286, at *2 (E.D. Mich. Jan. 13, 2017*)* (finding a failure to raise an issue on direct appeal constitutes a procedural default); *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (holding *Brady* claim in § 2255 review is procedurally barred when not raised on appeal).

    2. <u>Substantive Deficiencies</u>

The Court recommends denial of the § 2255 motion as related to the arguments outside ineffective assistance of counsel on the procedural grounds outlined above. In the interest of thoroughness, however, the Court analyzes the substantive failures of May's remaining arguments below.

May alleges a violation of his Sixth Amendment right to counsel because he was not allowed to call his attorney during a search of his home by police. [DE 354 at Page ID # 1408 (ground 31)]. Yet, a defendant "claiming that the police violated his Sixth Amendment right to counsel during the search of his house […] overlooks the point that the right to counsel does not attach until 'adversary *judicial* proceedings' begin." *United States v. Ortkiese*, 208 F. App'x 436, 440 (6th Cir. 2006) (quoting *Kirby v. Illinois*, 406 U.S. 682, 688 (1972) (emphasis added)). Thus, the Court recommends denial of the motion on this ground.

Next, May claims that he was denied equal protection under the law because "[o]ther defendants named in this conspiracy […] received the benefit of less restrictive pretrial conditions," such as home incarceration or bond. [DE 354 at Page ID # 1432 (ground 2)]. May, however, fails to state this claim with any particularity and merely provides conclusory statements. *See Lovejoy v. United States*, No. 95-3968, 1996 WL 331050, at *3 (6th Cir. June 13, 1996) (holding that conclusory statements are insufficient to warrant § 2255 relief). Merely because one defendant's pretrial detention status was different than other defendants in no way invokes the Equal Protection Clause. Although May does try to provide some context in his reply referencing his health,[3] the context remains vague and without the necessary causal connection to substantiate an equal protection claim. Accordingly, without the necessary supporting facts, May's allegations must be dismissed. *United States v. Domenech*, No. 1:06-CR-245-2, 2013 WL 3834366, at *2 (W.D. Mich. July 24, 2013).

Finally, May asserts his right to a speedy trial was violated. [DE 35 at Page ID # 1411-12 (grounds 34-35).] May contends that the trial was scheduled more than seventy days following his arrest on state charges. [*Id.*; *See also* DE 245 at Page ID # 668]. Yet, the seventy-day window under the Speedy Trial Act is not triggered by May's arrest on state charges, but by May's federal indictment or initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1); *See United States v. Brown*, 498 F.3d 523, 529 (6th Cir. 2007). May's jury trial was scheduled for February 9, 2016, exactly seventy days following his initial appearance on December 1, 2015. [DE 37 (Minute Entry)]. May's assertion that his rights under the Speedy Trial Act were violated are unfounded.[4]

---

[3] In his reply, May states that the disparate treatment between he and other defendants was "due to some medical or other needs" and having the "worst health of all the co-defendants." [DE 392 at Page ID # 1698-99].

[4] In addition to the legal argument regarding speedy trial rights, May also contends his counsel's failure to raise the argument also amounts to ineffective assistance of counsel. [DE 354

14

C.     **New Arguments Raised in the Reply**

Finally, May raises two arguments in his reply brief. [DE 392 at Page ID # 1693-94, 1696-97]. First, he claims that, due to "fraud perpetrated on his mother and father" concerning their signing of May's "'birth certificate application' and 'SS-5 application for a social security number,'" he now revokes his United States citizenship. [*Id.*]. Second, May claims the progression of his "debilitating, disabling, and terminal medical condition" is grounds to vacate or reduce his sentence. [*Id.* at Page ID # 1693-94].[5] Putting aside the questionable validity of these grounds, the Sixth Circuit has established that a court need not address an issue raised for the first time in a reply brief. *See*, *e.g.*, *United States v. Jerkins*, 871 F.2d 598, 602 n.3 (6th Cir. 1989) (refusing to address novel issues in appellant's reply brief). Accordingly, these arguments will not be examined by this Court.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district

---

at 1413-14 (grounds 36 and 37)]. Because May's underlying legal argument regarding alleged violations of his speedy trial rights are unfounded, any claim to ineffective assistance of counsel on those same grounds is likewise unfounded. *United States v. Martin*, 45 Fed. App'x. 378, 381 (6th Cir. 2002) (discussing that one's counsel cannot provide deficient performance by failing to raise wholly meritless claims) (citing *Strickland v. Washington*, *supra* at 688).

[5] Although May has referenced his health issues before, he has never claimed that the health issues provide an independent basis to set aside or reduce his sentence. Rather, May has only mentioned his health issues as they related to his arguments of ineffective assistance of counsel or equal protection. [DE 354 at Page ID # 1444 (ground 14); DE 392 at Page ID # 1698-99].

court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, the Court **RECOMMENDS** that the District Court **DENY** a certification of applicability.

## RECOMMENDATION

For all of the reasons stated in this decision, the Court **RECOMMENDS** that:

1) the District Court **DENY**, with prejudice, Defendant's § 2255 motion [*See* DE 354]; and

2) the District Court **DENY** a Certificate of Appealability as to all issues, should movant request a COA.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Civ. P. 72(b), Fed. R. Crim. P. 59(b), and local rule, within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 18th day of January, 2019.



Signed By:
Matthew A. Stinnett   MAS
United States Magistrate Judge